UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PATRICK NEMHARD,**<br>**Petitioner** | : | CIVIL NO. 3:01CV1700(JCH)(HBF) |
| v. | | |
| **HECTOR L. RODRIGUEZ, WARDEN,**<br>**COMMISSIONER JOHN ARMSTRONG,**<br>**Respondents** | : | NOVEMBER 21, 2003 |

### RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR HABEAS CORPUS

The Respondent submits this memorandum of law in opposition to the petitioner's petition for writ of habeas corpus.

**I.   PROCEDURAL HISTORY AND STATEMENT OF FACTS**

The procedural history and relevant statement of facts are as follows:

**A. Petitioner's Conviction**

The petitioner was convicted by a jury of rioting in a correctional institution, in violation of Connecticut General Statutes § 53a-179b, on June 17, 1994. The state trial court, Ford, J., sentenced the petitioner to a twenty-year term of imprisonment, to be suspended after fifteen years, and to be served consecutively to a sentence the petitioner was already serving for felony-murder. Memorandum of decision. Nemhard v. Warden, CV 98-0332091-S 2000WL 992160 at 1.

The petitioner appealed to the Appellate Court, challenging the trial court's denial of his motion for judgment of acquittal and the sufficiency of the evidence. Specifically, the petitioner claimed that the state had failed to prove his identity as one of the inmates who had participated in a prison disturbance. Petitioner's appellate brief on direct appeal. In a per curiam decision, the Appellate Court affirmed his conviction. State v. Nemhard, 39

Conn. App. 930, 667 A.2d 571 (1995). The petitioner does not appear to have filed a petition for certification to the Connecticut Supreme Court.

### B. Petitioner's State Habeas Petition

The petitioner then filed a state habeas petition, alleging his conviction for rioting in a correctional institution of January 16, 1993 was illegal in that it was obtained in violation of his right to the effective assistance of trial counsel.

A hearing[1] was held, where the petitioner, Attorney Dante Gallucci, and Sergeant John McGuire of the Connecticut State Police testified. The evidence adduced at trial and at the habeas hearing held on April 10, 2000 indicate that, during the riot at the prison, the petitioner's fingertip was severed. The state's theory of the events[2] was that the petitioner had pulled down the metal screen and tried to break the window[3] to effect an escape, and that his finger was severed by the screen. The severed fingertip was found in the day room of the prison, in the area where the metal screen was pried off and pulled down from a window. T. at 24, 41. In addition, one of the correction officers had testified that the petitioner was outside his cell at the time of the melee. T. at 24.

The petitioner testified, claiming that his fingertip was severed not by the screen but by his cell door, and that photographs of a cell door should have been suppressed because potentially exculpatory evidence (photographs and testimony of the blood stains

---

[1] The transcript of the habeas proceeding of April 10, 2000 is attached as Appendix A. All transcript references hereinafter refer to the April 10, 2000 proceeding.

[2] The petitioner had been charged with escape; however, he was acquitted of that charge. T. 4/10/00 at 41.

[3] There were marks on the window from some objects hitting the window. T. at 24.

on the petitioner's cell door) had not been photographed, preserved, or investigated in any way by the state or by the petitioner's own criminal trial counsel. The petitioner also testified that the door to his cell had a sharp edge which was capable of severing a fingertip. He admitted that there were photographs taken and admitted in the criminal trial; however, the edge of the cell door shown in the photograph was rounded off. The petitioner conceded at trial that his cell had been cleaned prior to Attorney Gallucci's representation, so that Gallucci could not have obtained any photographs with blood on the cell door.

Attorney Gallucci testified that he had been appointed as a special public defender to represent the petitioner on April 8, 1993, almost three months after the incident. Gallucci testified that he was familiar with the charge of rioting at a correctional institution, as he had represented a client at trial and on appeal on the same charge. He had discussed the state's evidence and the elements of the crime with his client. Gallucci testified that he had asked the petitioner how the fingertip was cut, and the petitioner explained that he was holding the screen in the day room when someone smashed the fire extinguisher in his hand. T. at 72. Gallucci testified that, based on this and other information from his client, it was very likely he would be convicted of several of the charges, including the rioting charge. He urged his client to consider seriously the state's offer. Gallucci produced a letter that he had written to his client documenting his advice. T. at 77-8; State's Exhibit D.

Sergeant McGuire of the Connecticut State Police testified that he had been assigned to investigate the matter. He had examined the petitioner's cell door but did not take photographs of the door because there was blood only on the doorjamb and not on the corresponding part of the door itself. Thus he concluded that the petitioner had not cut

his finger in the door. T. at 92-4.

In denying the petition, the state habeas court found first, that the petitioner elected to go to trial despite his attorney's advice, not because of it. The court found the testimony of Attorney Gallucci to be most credible, and the testimony of the petitioner to be not credible. It also ruled that Gallucci "had used a reasonable trial strategy in defending him, as he had every reason to conclude that his client had cut his finger on a screen in the day room because his client told him as much." 2000 WL 992160, 7 Conn. Super. at 6. Therefore, it was sound trial strategy not to request testing of the screen because test results could very well corroborate the state's case. Similarly, if a photograph of the cell door were introduced, it could establish "the implausibility of the defendant's story." It also noted that the state did not have photographs either, and the defendant could exploit that by arguing that, as the state bore the burden of proof, its case was incomplete. It ruled that the petitioner had not shown this trial tactic was not a sound trial strategy. The habeas court also found that the petitioner's case was not prejudiced by his attorney's decisions, and that, even in hindsight, they appear to be appropriate and reasonable, especially in light of the petitioner's acknowledgment of guilt. The state habeas court therefore denied his petition.

The Appellate Court affirmed the opinion of the habeas court in a per curiam decision dated May 22, 2001. Next the petitioner filed a petition for certification to the Connecticut Supreme Court, asserting that trial counsel had been ineffective in several ways, specifically by failing to investigate the case adequately, failing to advise the petitioner properly about alternatives to proceeding to trial, failing to obtain photographs of the petitioner's cell door, and failing to obtain rulings to exclude certain state's evidence,

e.g. photographs of a cell door, testimony concerning unpreserved blood stains on the door of petitioner's cell, and testimony that the petitioner's fingertip was found in the day room.

The Connecticut Supreme Court denied the petitioner's petition for certification on July 5, 2001.

### C. Petitioner's Federal Habeas Petition

On August 31, 2001, the petitioner filed a federal habeas petition containing ten counts. The respondent filed a motion to dismiss the petition. On July 30, 2003, the court granted respondent's motion to dismiss part 1 of claim 1 and claims 3 through 10, but denied the respondent's motion as to part two of claim 1 and claim 2.

## II. ARGUMENT

In Claim 1, part 2, the petitioner contends that Attorney Gallucci failed to "file the proper motion to block insufficient evidence that was used against [him] at trial." Based on the amended petition to the state court, the petitioner's claim is that his trial counsel was ineffective for failing to suppress evidence, specifically photographs of a cell door of another inmate that were admitted by the state and shown to the jury to disprove the petitioner's claim that his finger was severed when crushed in the closing of his door. See Amended petition to state habeas court and state habeas court's ruling.(This Court determined that this claim was raised by the petitioner in his amended state habeas petition and on appeal of denial of that petition. Ruling and Order of July 30, 2003.)

In Claim 2, the petitioner contends that trial counsel failed to challenge testimony concerning blood evidence on the ground that the state police had failed to preserve the

evidence.[4]

In order to prevail, the petitioner must show that the state court's rejection of his ineffective assistance claim was either "contrary to, or involved an unreasonable application of," that established law. As the petitioner's claim fails to meet the standard of 28 U.S.C. § 2254(d) for federal habeas corpus relief, his petition must be denied.

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter, "AEDPA") became effective April 24, 1996. As part of this Act, 28 U.S.C. § 2254(d) was amended to read as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Pursuant to this provision, a writ of habeas corpus "may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that

---

[4]"Detective John McGuire testified that he found blood stains on my cell door but that he had not seen any blood on the floor. Lieutenant Petaco testified opposite to this. He saw no blood on the cell door but on the cell floor. Detective McGuire testified that he had found my finger tip 10 ft away from the day room door. He took no pictures of the blood stain on my cell door. He testified that he also took no sample of blood from the cell door or from the day room to send to the forensic laboratory for testing. He stated he did not know how long the blood-like stain was there in the day room or the cell door. Detective McGuire failed to preserve evidence for the state, which was a violation of my constitutional rights which Attorney Gallucci did not protect me from."

(1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523 (2000). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the High Court's "decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412, 120 S.Ct. at 1523.

In the present case, the state habeas court's decision rejecting the petitioner's claim of ineffective assistance of trial counsel was not "contrary to" federal law. The High Court has declared that, in order to satisfy that provision,

> the state court's decision must be *substantially different* from the relevant precedent of [the Supreme Court]. . . A state-court decision will certainly be contrary to [the Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . A state-court decision will also be contrary to [the Supreme Court's] clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Court] and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams, 120 S.Ct. at 1519-20 (emphasis added).

The Court then distinguished that situation from the run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court cases] to the facts of a prisoner's case [which] would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume for example, that a state court decision on a prisoner's ineffective-assistance claim correctly identifies Strickland[ v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with [the Court's] decision in

Strickland as to the legal prerequisites for establishing an ineffective-assistance claim, *even assuming the federal court considering the prisoner's habeas application might reach a different result applying the Strickland framework itself.*
Williams, 120 S.Ct. at 1520 (emphasis added).

To emphasize the deference owed state court decisions, the Court reiterated that "[a]lthough the state-court decision may be contrary to the federal court's conception of how Strickland ought to be applied in that particular case, the decision is not 'mutually opposed' to Strickland itself" and, therefore, not subject to reversal in federal habeas corpus. Id.

In the present case, the state habeas court first correctly identified Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052(1984) as the controlling legal authority. After a summary of the facts presented at trial, it stated:

The right to counsel . . . is the right to effective assistance and not to perfect or error-free representation. Commissioner of Correction v. Rodriguez, 222 Conn. 469, 478 (1992); Williams v. Bronson, 21 Conn. App. 260, 263 (1990). A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction..has two components. First, the defendant must show that counsel's performance was deficient... Second the defendant must show that the deficient performance prejudiced the defendant... Unless the defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984) . . .

Therefore, to prevail on a claim of ineffective assistance of counsel, the convicted defendant must demonstrate both deficient performance and actual prejudice. Bunkley v.

-8-

Commissioner of Correction, supra, 222 Conn. 455. To satisfy the first prong of the test, that counsel's performance was deficient, the defendant must show that his counsel made "errors so serious that [he]was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. quoting Strickland v. Washington, supra, 466 U.S. 694. Counsel's representation must be shown to have fallen below an objective standard of reasonableness, considering all of the circumstances. Id. at 687-88. . . Judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."...The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland v. Washington, supra, 466 U.S. 689..." A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, supra, 466 U.S. 689.

In order to satisfy the second prong of the test, that counsel's deficient performance prejudiced his defense, the defendant must prove that "counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Bunkley v Commissioner of Correction, supra, 222 Conn. 455, Strickland v. Washington, supra, 466 U.S. 687.

This second prong of the test is satisfied if the defendant can demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra, 466 U.S. 694; Siano v. Warden, supra 31 Conn. App. 98.

"A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies...If it is easier to dispose of an ineffective [assistance] claim on the ground of lack of prejudice ... that course should be followed." Aillon v. Meachum, supra, 211 Conn. 362, Fair v. Warden, 211 Conn. 398, 430, 559 A.2d 1094 (1989).As a result, '[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland v. Washington, supra, 466 U.S. 700.

The habeas court's ruling demonstrates its reliance on federal precedent, and more specifically of the United States Supreme Court. The court's reliance on Rodriquez, 222 Conn. 469, for example, is appropriate because the Rodriquez opinion evaluated the ineffectiveness claim also based on Strickland. Similarly, in Williams v. Bronson, 21 Conn. App. 260 (1990), relied upon by the habeas court, the Connecticut Appellate Court looked to state habeas cases that employed the Strickland test. Thus the state habeas court's ruling evaluated the petitioner's claims in light of precedent of our Supreme Court.

So even though this court might have reached a different result applying the Strickland test, the state court's decision cannot meet the "contrary to" provision of § 2254(d)(1). Williams, 120 S.Ct. at 1520. See Francis S. v. Stone, 221 F.3d 100, 112 (2d Cir. 2000)(state court's use of correct legal standard "eliminates any concern that its decision is 'contrary to' established federal law. . . .")

If a state court decision is not "contrary to" U.S. Supreme Court precedent, the federal habeas court must next determine whether the state court's decision involved an "unreasonable application" of clearly established federal law. In so doing, a federal habeas court "should ask whether the state court's application of clearly established federal law

was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Thus, courts must apply an objective standard. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410, 1522. See also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1174-75 (2003) (A state court's application must be "objectively unreasonable," and "objectively unreasonable" requires something more than "clear error.") "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Williams, 529 U.S. at 411, 120 S.Ct. at 1522.

Once again emphasizing the difference between an "unreasonable" state court decision and one with which a federal court merely disagrees, the Court also stated that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 120 S.Ct. at 1522 (emphasis in original). Thus, under this provision, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id.; see Sellan v. Kuhlman, 261 F.3d 303, 310 (2d Cir. 2001); see also Jones v. Stinson, 229 F.3d 112, 121 (2d Cir. 2000)("On direct review, we might have concluded that [the excluded evidence] created reasonable doubt that did not otherwise exist. As a habeas court, however, our review is limited to whether the [state court]'s ruling was objectively reasonable, not whether it was correct."); Francis

S., 221 F.3d at 113 ("As an initial question of federal constitutional law, unconstrained by section 2254(d)(1), we might well rule that [a constitutional] violation has been shown. Applying the standard of 'objective unreasonableness' required by section 2254(d)(1), however, we cannot say this it was objectively unreasonable" for the state courts to reject the petitioner's claim). Indeed, as the High Court declared in Lockyer, even a federal habeas court's belief that there was "clear error" in the state court's reasoning is not dispositive of the question of whether the state court's decision was *unreasonable*. Lockyer, 123 S.Ct. at 1174-75.

Here, the petitioner is unable to meet that difficult standard. The state habeas court reasonably considered the evidence of defense counsel's strategy in light of the information supplied by the defendant. It noted that "what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsels failure to purse those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." Strickland v. Washington, supra, 466 U.S. 691 The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. State v. Talton, 197 Conn. 280, 297-98, 497 A. 2d 35 (1985).

"A complete review of the testimony and evidence presented allows the Court to find that the petitioner has received effective assistance of counsel. Specifically, the Court does find that the petitioner elected to go to trial despite the advice fo his attorney, not because of it. His advice was sufficient and based on his assessments of the case law, the strength of the state's case and on the petitioner's own account of the events, including his admissions of guilt.

"Under the factual circumstances of this case, Attorney Gallucci effectively represented his client while complying with his responsibilities to the Court. Attorney Gallucci used a reasonable trial strategy in defending the petitioner. A criminal defense attorney can often benefit from what was not done in the investigation of a case. In the present case, Attorney Gallucci had every reason to conclude that his client had cut his finger on a metal screen over the day room because his client had told him as much. It therefore was a sound trial strategy not to obtain or request testimony of the screen, since counsel had reason to conclude that such testing would only corroborate the prosecutions's case. Similarly, a photo of the cell door, if introduced by the defense, had the possibility of establishing the implausibility of the defendant's story. Since the prosecution did not have the photographs either, and the prosecution had the burden of proof, defense counsel could exploit this fact and at the least argue that the prosecution was presenting an incomplete case. The petitioner has not shown that ths tactic was not a sound trial strategy.

Further, the petitioner's case was not prejudiced by the decisions of Attorney Gallucci made in his trial defense. His decisions appear, even in hindsight, to be appropriate and reasonable, especially in light of the petitioner's acknowledgment of guilt.

Irrespective of whether this court agrees with the evaluation of the habeas court, it cannot be said that such a conclusion was an "unreasonable application of" Supreme Court precedent. The habeas court carefully considered the standard to be applied and evaluated the information supplied from the petitioner to Gallucci in order to decide whether counsel's performance was deficient. The habeas court recognized the propriety of trial counsel's strategy in not challenging the testimony because he had every reason to conclude the petitioner had cut his finger not on the cell door but on a metal screen over the day room door, as his client told him. It was sound trial strategy not to request testing of the screen because that would have worked to the petitioner's disadvantage by supporting the state's case. Similarly, if the defense introduced the photograph of the cell door, it would have prompted the investigating detectives to explain why they had not photographed it.[5] Their explanation--that it was impossible to have cut a finger on the cell door, as the petitioner claimed, and not leave blood on both the door and jamb-- would undermine the defendant's theory of the case. As the state did not have photographs, again it was a sound trial strategy to argue the deficiency in the state's case. The habeas court's ruling that carefully reviewed all aspects of the evidence in light of the Strickland standards was objectively reasonable in all aspects.

---

[5] The petitioner conceded that he was not saying that his attorney should have taken photographs, but that the people who investigated the case before his attorney was even involved should have taken pictures. Habeas trial T.4/10/00 at 31.

Therefore, the petitioner cannot demonstrate that the state court's rejection of his ineffective assistance of counsel claim was "contrary to, or involved an unreasonable application of the law." Accordingly, federal habeas relief is not warranted on the petitioner's claims.

                              Respectfully submitted,

                              RESPONDENT

By: _____
RITA M. SHAIR
Senior Assistant State's Attorney
Appellate Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5807
FAX NO: (860) 258-5828
Federal Bar No.  ct 01718

## CERTIFICATION

I hereby certify that a copy of this document was hand-delivered to: Patrick Nemhard, Inmate No: 140336, Cheshire Correctional Institution, 900 Highland Avenue, Cheshire, Connecticut 06410, on November 21, 2003.

_____
RITA M. SHAIR
Senior Assistant State's Attorney