1        Q     But you knew that the State's theory was that

2   your finger was severed   --

3        A     Trying to escape.

4        Q     (Continuing)   --  in the Day Room trying to

5   escape.

6        A     Yeah.

7        Q     Okay.  And you knew that going in?

8        A     Yeah.

9        Q     You knew that there would be witnesses coming in

10  to testify that you were seen outside your cell?

11       A     Yeah.

12       Q     All right, thank you.

13            MS. HOWE:  I have nothing further, Your

14       Honor.

15            THE COURT:  I just need one moment,

16       Counsel.

17            (Whereupon, the Court takes a moment.)

18            THE COURT:  Thank you.

19            Attorney Hutchinson, you may proceed.

20            MS. HUTCHINSON:  Thank you.

21  **REDIRECT BY ATTORNEY HUTCHINSON:**

22       Q     Mr. Nemhard, you testified that there were a lot

23  of COs moving through the area, moving evidence.

24       A     Yes, Ma'am.

25       Q     You also testified, in response to Mrs. Howe's

26  question, that there was testimony from different sources

27  about where your finger was found.  Is that correct?

1    A    Yes, Ma'am.

2    Q    That it was found  --  according to different

3    testimony they found it in different places.

4    A    Different feet.  One was three feet, two feet.

5    The detective, major, he said ten feet.

6    Q    Ten feet from the window?

7    A    Yeah.

8    Q    Was the finger found on the floor?

9    A    It was found on the floor, floating.  Photograph

10   was tooken.

11   Q    In an area where there were a lot of people

12   walking around?

13   A    Yes.

14   Q    Was it your claim to your attorney that it had

15   been kicked around or moved?

16   A    No.  When I got my finger cut and I came out, I

17   told the CO.  Because at first I thought I cut my whole

18   finger off.  So I told the COs to retreat the finger so I

19   could sew it back on.  And they said, Don't worry about it,

20   and just wrapped my hand up and took me and put me in a

21   cold cell.  A cell that is a lock-down cell.  Then they

22   brought me to the (inaudible) hospital and I never seen the

23   tip, the flesh of my finger.

24   Q    But was your theory that that evidence had been

25   moved around  --

26   A    Yes, by officers.

27   Q    (Continuing)  --  by people walking through?

1    A    Yes.

2    Q    Specifically, why did you want the photograph of

3  your door as opposed to the door in the next cell?

4    A    The door that they showed  --  the engineer got

5  up there and said, Look how this door is rounded off.

6    Q    And that's the edge of it, that's rounded?

7    A    Yeah.  It's rounded off.

8         But my door was not rounded off, my door was a

9  square flat.  It was just square and flat.  And it had no

10  paint on it.  It would be chipping, you see, because they

11  had brown paint, then it went to like a beige-white, then

12  it was a blue.  And after hitting, you know, hitting  --

13  (Whereupon, the Petitioner hits his hands together three

14  times.)

15    A    (Continuing)  --  the paint chip off, chip off,

16  chip off.  So I wanted to show the flat and the sharp

17  surface to it.

18         So when they brought a door in, they also

19  mentioned all the doors was rounded off.  And when the jury

20  looked at a picture they seen the round edges.  And with my

21  door the rust was showing.  Actually, metal was showing off

22  my door.

23    Q    So there was metal underneath the wood  --

24    A    Yeah  --

25    Q    (Continuing)  --  or underneath the paint.

26    A    (Continuing)  --  No.  There's no wood, it's all

27  metal.

1    Q    And that's what you needed to show to the jury?

2    A    Yes.

3    Q    And did your attorney bring in any photographs of

4    that?

5    A    No.

6              MS. HUTCHINSON:  I have nothing further,

7    Your Honor.

8              THE COURT:  Attorney Howe, anything

9    further?

10             ATTORNEY HOWE:  No, thank you.

11             THE COURT:  Very well.

12             Thank you, sir.  You may step down.

13             MR. NEMHARD:  Thank you, Sir.

14             THE COURT:  You're welcome.

15             (Whereupon, the Witness steps down.)

16             MS. HUTCHINSON:   Your Honor, I did

17    subpoena four of the photographs that were

18    admitted as exhibits in the Trial Court.  And the

19    clerk from Bridgeport is here with those

20    photographs.

21             Now, the State has some concern about the

22    photographs leaving the clerk's office, in

23    Bridgeport, to become an exhibit in the case

24    here, and I don't know how the Court wants to

25    handle that.

26             THE COURT:  Counsel?

27             MS. HOWE:  I do have a suggestion, Your

1    Honor.

2         The exhibits that  --  the clerk is here.

3    He has most of the trial exhibits and I do have a

4    concern that  --  I think it is not a good

5    procedure to have exhibits, some exhibits, in one

6    courthouse and some exhibits in another.  It

7    makes it difficult in the future, if anyone's

8    attempting to view exhibits, for them to locate

9    them.  The logical place to find exhibits is the

10   courthouse where the trial occurred, and it would

11   make sense for the clerk to retain custody of the

12   trial exhibits.

13        I think the point that counsel for the

14   petitioner can make, however, can be done and

15   still return the exhibits to the originating

16   courthouse.

17        Since these are photographs, and each

18   exhibit is labeled, if counsel wishes the Court

19   to take judicial notice of the photographs we can

20   have, on the record, what each photograph is a

21   picture of.  Which is also described in the

22   transcript which Your Honor has  --  this is a

23   photograph of thus and so.  It's described before

24   each exhibit is introduced for purposes of Your

25   Honor following the transcript.

26        I could understand how Petitioner would

27   want Your Honor to see the exhibit that's being

1    described in the transcript.  But I think what we

2    could do is have the Court take notice on  --

3    for example  --

4         (Whereupon, Attorney Howe picks up a

5    picture to demonstrate to the Court.)

6         I'm looking at photograph seventeen.  This

7    is a picture of (inaudible) indicate what the

8    Court recognizes it to be a picture of,

9    acknowledge it was a full exhibit at the trial.

10   Then we could return it to the clerk.

11        In other words, there's no need to keep the

12   photographs here indefinitely, because the Court

13   can notice what the items you're looking at and

14   then return them to the clerk.

15        I think that would be an economical way to

16   deal with it, and would also avoid a situation  -

17   -  Mr. Nemhard's indicated he might potentially

18   take federal review.  It would make it easier for

19   him, and whoever represents him, to locate

20   everything because it would all be back in the

21   spot where it originated from.

22        THE COURT:  With that, and with photocopies

23   of the photographs, will they provide sufficient

24   information to the Court at any points that

25   you're raising?

26        MS. HUTCHINSON:  They might, Your Honor,

27   depending on the quality of the photograph

1    machine.

2        MS. HOWE:  But the Court would see the

3    original  --

4        THE COURT:  Yes, of course.

5        MS. HOWE:  (Continuing)  --  and then you'd

6    have a photocopy to memorialize the fact  --

7        THE COURT:  Right.

8        MS. HOWE:  (Continuing)  --  that you did

9    see the original.   And between the two  --

10       THE COURT:  And anything you wish to point

11   out  --  you should see the photocopy as well.

12       MS. HUTCHINSON:  Right.

13       THE COURT:  And anything that you would

14   like to point out, to distinguish in any way, can

15   be reviewed by the Court immediately and made

16   note of.

17       MS. HOWE:  Yes.

18       MS. HUTCHINSON:  Procedurally, I don't know

19   how the Court wants to proceed.  Because I do

20   have the clerk here with the photographs now.

21       THE COURT:  Well, we've got a photocopy

22   machine right down the hall.  Why don't we see if

23   we can get some kind of images that are

24   satisfactory to counsel and then we can make

25   whatever stipulations we have to.

26       (Whereupon, the sheriff is handed pictures

27   to photocopy.)

1        THE COURT:  Is there anything on the backs

2   of them?

3        MS. HUTCHINSON:  There's a label.

4        THE COURT:  Is the label relevant to, other

5   than the identification of them, we can mark that

6   right on the photocopy.

7        MS. HOWE:  Sure  --

8        THE COURT:  If that's  --

9        MS. HOWE:  (Continuing)  --  I would think

10  so.

11       MS. HUTCHINSON:  The label is just  --

12  they should just say on the back, you know,

13  State's Exhibit Seventeen, Eighteen, Nineteen,

14  Twenty.

15       THE COURT:  If you would, sheriff,

16  photocopy the back and then staple the one to the

17  other.

18       Thank you.

19       MS. HOWE:  As far as Exhibit One goes, Your

20  Honor, which was the schematic of the Department

21  of Corrections, the layout of the hallways, where

22  the bubble was, where the cells were, I do have a

23  copy of that exhibit.  It's a print and I'll show

24  it to counsel.  This is something, because it's

25  not a photograph, I think we can probably

26  introduce as a copy.

27       THE COURT:  Very well.

1    (Whereupon, counsel previews blueprints.)

2    MS. HUTCHINSON:  It's a copy.

3    MS. HOWE:  I think this would be of

4    assistance to the Court since the transcript

5    makes considerable mention of this diagram as to

6    where people are.  It would be easier to follow

7    the transcript having the  --

8    THE COURT:  Okay.  Do you plan on

9    introducing that on your case?  Or, how do you

10   wish to  --

11   MS. HUTCHINSON:  We could do it by

12   stipulation.

13   THE COURT:  (Continuing)  --  at this time?

14   MS. HOWE:  Stipulation will be fine, Your

15   Honor.

16   THE COURT:  All right, fine.

17   THE CLERK:  Exhibit Three, Your Honor.

18   (Whereupon, the layout of the cell block

19   was marked as Exhibit Three for identification.)

20   THE COURT:  Okay, Exhibit Three.

21   THE CLERK:  Plaintiff's Exhibit Three,

22   layout of the cell block.  Would that be attached

23   to it?

24   THE COURT:  Yes.

25   MS. HUTCHINSON:  And that had been Exhibit

26   One in the  --

27   MS. HOWE:  That was Exhibit One from the

1    original trial, yes.

2    THE CLERK:   Layout of cell block is Exhibit

3    Three in this trial.   It was Exhibit One in

4    criminal trial.

5    MS. HOWE:   That's correct.

6    THE COURT:   Very well.   If there is no

7    objection it may be introduced as a full exhibit.

8    MS. HUTCHINSON:   Could I see it please?

9    THE COURT:   Yes, as long as we have a

10    couple of minutes.

11    THE COURT:   And would counsel please

12    identify the  --  I assume that these central

13    stations are the bubbles that are spoken of?

14    MS. HOWE:   Your Honor, perhaps this could

15    even be clarified from Mr. Nemhard, or we could

16    agree, that the bubble is the square that's on

17    the exhibit located between the items that are

18    demarcated A-ten Day Room, A-seven Day Room,

19    Assembly Room, and A-eight Day Room.   There's a

20    box in the center.   That's what's referred to as

21    the bubble.

22    The finger was found in the A-ten Day Room,

23    which is marked on the schematic.   And Mr.

24    Nemhard's cell is in a corridor labeled A-ten,

25    and his cell number was cell number ten.

26    THE COURT:   So for purposes of

27    identification, this square that you speak of is

1    designated Officer Station, One-Four-Seven?

2            MS. HOWE:   That's correct, Your Honor.

3            THE COURT:   Very well.

4            MS. HOWE:   That's the term, the bubble, but

5    that's technically what it is, officer station.

6            THE COURT:    Okay, just so we can identify

7    it on the (inaudible).

8            MS. HOWE:   I apologize for using a

9    vernacular.

10           THE COURT:   Okay, thank you.

11           MS. HOWE:   I do believe that depicts the

12   area referred to in the testimony as to where his

13   cell was located and where the finger tip was

14   located.

15           (Whereupon, the Court reviews Exhibit for

16   prison cell location.)

17           MS. HOWE:   Counsel, do you wish to actually

18   write on the Exhibit?

19           (Whereupon, the sheriff returns with

20   photocopies of pictures and gives them to the

21   Court.)

22           THE COURT:   This should go to counsel

23   first.

24           (Whereupon, the sheriff gives to counsel

25   the photocopies to review.)

26           MS. HOWE:   The photocopies that you're

27   offering, Counselor, refer to which original

1    exhibits please?

2         MS. HUTCHINSON:  The first one, which would

3    probably be my Exhibit Four, is a photocopy of

4    Trial Court Exhibit Seventeen.

5         THE CLERK:  Okay.  What's the description

6    of that?  What would that be called?

7         MS. HOWE:  These are referred to in the

8    transcript that is presented.

9         THE CLERK:  (inaudible) that's the photo

10   of.

11        MS. HUTCHINSON:  If I could take a look at

12   the transcript.

13        MS. HOWE:  I believe it's at the very

14   beginning of the second transcript that you

15   offered, Counsel.

16        MS. HUTCHINSON:  May fifth, page seven, or

17   May third, page seven.

18        THE COURT:  May third, page seven?

19        MS. HOWE:  Yes.  It begins on page six and

20   continues to page seven, I believe.

21        MS. HUTCHINSON:  First exhibit is a

22   photograph of corridor ten, cell A-ten dash ten,

23   cell door.

24        THE COURT:  Cell door, A-ten dash ten?

25        MS. HUTCHINSON:  That's correct.

26        THE CLERK:  So this is the photocopy of

27   Trial Exhibit Seventeen.  This is the cell door

1   --

2           MS. HUTCHINSON:  A-ten dash ten.

3           THE CLERK:  (Continuing)  --  A-ten dash

4   ten.  Cell door A-ten dash ten.  Trial Exhibit

5   Seventeen.

6           Your Honor, here's the exhibit.  I'll mark

7   that Four.  I'll put it on the back (inaudible).

8           (Whereupon, the photocopy was marked as

9   Exhibit Four for identification.)

10          THE COURT:  Thank you.

11          And Counsel are satisfied with the

12  photocopy?  It reflects an accurate depiction of

13  the photo?

14          MS. HUTCHINSON:  That's correct, Your

15  Honor.

16          THE COURT:  Very well, thank you.

17          I've reviewed the original photo, and the

18  photocopy.

19          You may proceed.

20          MS. HUTCHINSON:  The second one is the

21  Trial Court Exhibit Eighteen, which is a

22  photographic close-up picture of the door in cell

23  A-ten dash ten, half open.

24          THE CLERK:  Your Honor, that's Exhibit

25  Five.

26          Exhibit Five is a photocopy of Trial

27  Exhibit Eighteen, entitled Close-up of Door in

1    the A-ten dash ten, half open.

2              (Whereupon, the photocopy was marked as

3    Exhibit Five for identification.)

4              THE COURT:  Thank you.

5              And once again, with regard to this photo,

6    and let's make it with regard to all photos,

7    Counsel are in agreement as to the accuracy of

8    the photocopy as compared with the original?

9              MS. HOWE:  Yes, Your Honor.

10             THE COURT:  Very well.

11             MS. HUTCHINSON:  Next is what had been

12   Trial Court Exhibit Nineteen, which is a close-up

13   of the door jamb of A-ten dash ten.

14             THE CLERK:  Your Honor, I just have a

15   suggestion, and I'll ask counsel, to point out on

16   some of these copies of exhibits with an arrow,

17   so we know which end is up on some of these.

18   It's hard to tell.

19             THE COURT:  Okay, very well.

20             If there's no objection.

21             (Whereupon, counsel approaches the clerk's

22   desk to review where arrows are located on

23   photocopies.)

24             THE CLERK:  Exhibit Six is photocopy of

25   Trial Exhibit Nineteen, close-up of door jamb to

26   A-ten dash ten.

27             THE COURT:  Thank you.

1    (Whereupon, the photocopy was marked as

2    Exhibit Six for identification.)

3    THE CLERK:  I have an arrow pointing which

4    end is up.

5    Your Honor, this is Exhibit Six.

6    MS. HUTCHINSON:  That last one is what was

7    Exhibit Twenty in the Trial Court, which is a

8    close-up of the door fully opened in A-ten-ten.

9    And it's the leading edge of the door as opposed

10    to the back edge of the door.

11    THE CLERK:  Close-up of door fully opened.

12    MS. HUTCHINSON:  In A-ten-ten.

13    THE CLERK:  A-ten-ten, leading edge.

14    A-ten dash ten, leading edge.

15    (Whereupon, the photocopy was marked as

16    Exhibit Seven for identification.)

17    MS. HUTCHINSON:  In other words, the edge

18    that would come and close against the door jamb.

19    THE CLERK:  That's Exhibit Seven in this

20    trial here.

21    Exhibit Twenty in the criminal trial is

22    Exhibit Seven in this trial, in it's entire.  A

23    close-up of the door fully opened.

24    A-ten dash ten, leading edge.

25    MS. HUTCHINSON:  I'm going to ask the Court

26    to take note in looking at the photograph.  The

27    edge of the door is rounded as oppose to a sharp

1    edge.

2         Let's leave it is on the transcript, but

3    when taking a look at the photograph, that   --

4    it doesn't show it as clearly in the photocopy.

5         THE COURT:  I will make note of that.

6         THE CLERK:  I just drew in an arrow on

7    number seven, showing which way is up.

8         MS. HOWE:  Your Honor, I think we've both

9    agreed that the transcript, which is already a

10   full exhibit, would show that Mr. Nemhard was

11   claiming that the cell that he was assigned was

12   the A-ten corridor, and he's claiming he was

13   assigned to cell number eleven.

14        I didn't want to mislead the Court.  I

15   think that's my understanding of the transcript

16   as to where he's claiming he was assigned.

17        MS. HUTCHINSON:  That's correct.  The

18   transcript   --

19        THE COURT:  Just excuse me for one moment.

20        (Whereupon, the sheriff brings a message to

21   the Court.)

22        MS. HUTCHINSON:  (Continuing)   --  Your

23   Honor, I just got a message from Attorney Grover

24   that Judge Axelrod needs to see me.

25        THE COURT:  Very well.  I assume that means

26   immediately.

27        MS. HUTCHINSON:  It didn't say immediately.

1    It was in big print, but it didn't say

2    immediately.

3         THE COURT:  It probably wouldn't be a bad

4    idea for us to take a short break, just so we can

5    determine Judge Axelrod's needs, and then we'll

6    reconvene.

7         MS. HUTCHINSON:  Okay.

8         MS. HOWE:  Thank you, Your Honor.

9         THE COURT:  We'll pick up with the

10   statement that you just made about cell number

11   eleven.

12        MS. HOWE:  I was just  --  when I cross

13   examined Mr. Nemhard, I was asking him about his

14   theory of the case and I think I asked him if his

15   theory was that his cell was A-ten, when actually

16   his theory was that his cell was A-ten, cell

17   number eleven, which is numbered on the exhibit

18   that Your Honor has.

19        THE COURT:  Very well, so his  --

20        MS. HOWE:  But that's in the transcript

21   also.

22        THE COURT:  (Continuing)  --  his cell is

23   actually cell number eleven?

24        MS. HOWE:  That was his claim  --

25        MS. HUTCHINSON:  That's correct.

26        MS. HOWE:  (Continuing)  --  yes.  That was

27   his claim.

1    THE COURT:  But that's not stipulated  --

2    MS. HOWE:  I think the transcript speaks

3  for itself as to the locations, but  --

4    THE COURT:  Okay.

5    MS. HOWE:  (Continuing)  --  I didn't want

6  to mislead the Court as to what his theory of the

7  case was.

8    THE COURT:  Very well.

9    MS. HOWE:  May be the clerk be excused?

10    MS. HUTCHINSON:  Your Honor, I have no

11  further need for the clerk, so the clerk can be

12  excused.

13    THE COURT:  Very well.

14    Yes, you may be excused.

15    THE CLERK:  Do you want these exhibits

16  back, Your Honor?

17    THE COURT:  Yes.  And there is a

18  stipulation that the originals may be returned,

19  is that correct?

20    MS. HUTCHINSON:  That's correct.

21    MS. HOWE:  Thank you, Your Honor.

22    THE COURT:  Your welcome.

23    (Whereupon, a recess was taken.)

24    THE COURT:  Attorney Hutchinson, you're

25  continuing with your re-direct, I believe.

26    MS. HUTCHINSON:  No, I had completed that.

27  I was going to call another witness.

1        THE COURT:  Oh.  Very well.

2        MS. HUTCHINSON:  Attorney Gallucci.

3        THE COURT:  Good afternoon, Counsel.

4        THE CLERK:  Please raise your right hand.

5    Do you solemnly swear the evidence you shall give

6    concerning the case now in question shall be the

7    truth, the whole truth, and nothing but the

8    truth, so help you God?

9        MR. GALLUCCI:  I do.

10       THE CLERK:  Please state your name.

11       MR. GALLUCCI:  Attorney Dante Gallucci.

12       THE CLERK:  Spell your last name.

13       MR. GALLUCCI:  G-a-l-l-u-c-c-i.

14       THE CLERK:  Business address?

15       MR. GALLUCCI:  Two Sherman Court,

16   Fairfield.

17       THE CLERK:  Please be seated.

18   **DIRECT EXAMINATION BY ATTORNEY HUTCHINSON:**

19       Q    Good afternoon, Attorney Gallucci.

20       A    Good afternoon.

21       Q    By whom are you employed?

22       A    I'm self employed.  I work with the firm of

23   DeSiena and Gallucci, in Fairfield.

24       Q    And are you an attorney licensed to practice in

25   the State of Connecticut?

26       A    Yes, I am.

27       Q    And in 1993, by whom were you employed?