UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICK NEMHARD, : | |
|     Petitioner, : | |
| : | PRISONER CASE NO: |
| v. : | 3:01-cv-1700 (JCH) |
| : | |
| WARDEN HECTOR L. RODRIGUEZ and : | |
| COMMISSIONER JOHN ARMSTRONG : | SEPTEMBER 20, 3004 |
|     Respondents. : | |

**RULING RE: AMENDED PETITION
FOR WRIT OF HABEAS CORPUS [DKT No. 14]**

The petitioner, Patrick Nemhard, currently confined at the Cheshire Correctional Institution in Cheshire, Connecticut, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on the charge of rioting at a correctional institution. For the reasons set forth below, the amended petition is denied.

**I.     PROCEDURAL BACKGROUND**

On June 17, 1994, in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport, a jury convicted Nemhard of rioting in a correctional institution in violation of Connecticut General Statutes § 53a-179b. The court sentenced Nemhard to twenty years of imprisonment suspended after fifteen years and followed by five years of probation. The sentence was to be served consecutively to the sentence Nemhard was already serving for felony murder. Nemhard appealed his conviction to the Connecticut Appellate Court claiming that there was insufficient evidence to support a conviction on the charge of rioting and that trial court had erred in denying his motion for judgment of acquittal. On December 5, 1995, the Appellate Court affirmed the conviction and sentence in a per curiam decision. State v. Nemhard, 667 A.2d 571

(Conn. App. Ct. 1995). Nemhard did not file a petition for certification to appeal the decision of the Appellate Court.

On December 17, 1996, Nemhard filed a petition for writ of habeas corpus in this court. Nemhard v. Armstrong, Pet. for Writ of Habeas Corpus [Dkt. No. 2], Case No. 3:96cv2569 (RNC). On August 29, 1997, the respondent filed a motion to dismiss on the ground that the claims in the petition were not fully exhausted [Dkt. No. 13]. In response to the petition, on March 25, 1998, Nemhard filed a motion to withdraw the petition without prejudice to enable him to exhaust his state court remedies as to the claims in the petition as well as to add some new ineffective assistance of counsel claims. He asserted that, after he had exhausted his state court remedies, he intended to comply with the requirements of the Antiterrorism and Effective Death Penalty Act and file one habeas petition in this court including all of the claims he sought to have the court review. On March 31, 1998, the court approved the request to withdraw the action without prejudice. Nemhard, Case No. 3:96cv2569 (RNC) (D. Conn. Mar. 31, 1998) (Endorsement Granting Motion to Withdraw).

On May 13, 1998, Nemhard filed a petition for writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Danbury claiming that counsel had been ineffective prior to and during trial. On June 30, 2000, a Connecticut Superior Court Judge denied the petition. Nemhard v. Warden, No. CV 980332091S, 2000 WL 992160 (Conn. Super. Ct. June 30, 2000). Nemhard appealed his conviction to the Connecticut Appellate Court. On May 22, 2001, the court dismissed the appeal in a per curiam decision. Nemhard v. Commissioner of Correction, 773 A.2d 1002 (Conn. App. Ct. 2001). On July 5, 2001, the Connecticut Supreme Court denied the petition for

certification to appeal the decision of the Connecticut Appellate Court.  Nemhard v. Commissioner of Correction, 257 Conn. 906, 777 A.2d 193 (Conn. 2001).

On August 31, 2001, Nemhard commenced this action.  On March 25, 2002, the respondents moved to dismiss on the ground that the petition was barred by the one-year statute of limitations or in the alternative on the ground that the petition was a mixed petition.  On March 13, 2003, the court issued a Ruling addressing the respondents' motion to dismiss.  (See Dkt. No. 13.)  In that Ruling, the court concluded that Nemhard had failed to exhaust his state court remedies as to all claims except the claims for ineffective assistance of counsel and that the petition was barred by the one-year statute of limitations.  The court also concluded that extraordinary circumstances warranted the equitable tolling of Nemhard's ineffective assistance of counsel claims.  The court permitted Nemhard thirty days to file an amended petition for writ of habeas corpus to include only the exhausted ineffective assistance of counsel claims which were raised in Nemhard's state habeas petition dated May 13, 1998.  The court cautioned Nemhard that if he sought to assert any claims other than the ineffective assistance of counsel claims, those claims would be dismissed for failure to exhaust administrative remedies and for violating the statute of limitations.

On March 27, 2003, Nemhard filed an amended petition for writ of habeas corpus containing ten claims.  Pursuant to the March 13, 2003 Ruling, the court granted the respondents' motion to dismiss on the ground that the insufficiency of the evidence claims raised in the amended petition, claims 3-10, and the ineffective assistance of counsel claim in the amended petition, part one of claim 1, were not exhausted and were barred by the one-year statute of limitations.  The court denied the motion to

dismiss on the ground that part two of claim 1 and claim 2 were not barred by the statute of limitations and were exhausted and ordered the respondents to address the merits of part two of claim 1 and claim 2.  (See Dkt. No. 17.)

## II.    STANDARD OF REVIEW

The federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), significantly amended 28 U.S.C. §§ 2244, 2253, 2254, and 2255.  The amendments "place[] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  Williams v. Taylor, 529 U.S. 362, 412 (2000).  The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a

generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002). A state court decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Id. When considering the unreasonable application clause, the focus of the inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable." Id. The Supreme Court has emphasized that "an unreasonable application is different from an incorrect one." Id. (citing Williams, 529 U.S. at 411 (holding that a federal court may not issue a writ of habeas corpus under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). In both scenarios, federal law is "clearly established" if it may be found in holdings, not dicta, of the Supreme Court as of the date of the relevant state court decision. Williams, 519 U.S. at 412.

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. Nemhard has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See Boyette v.

5

Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).

Collateral review of a conviction is not merely a "rerun of the direct appeal." Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir. 1991), cert. denied, 502 U.S. 895 (1991). Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (citations and internal quotation marks omitted).

## III.  DISCUSSION

In part two of claim 1, Nemhard argues that his attorney was ineffective at trial because he failed to suppress "insufficient evidence." The court construes this claim as a claim that Nemhard's trial attorney failed to suppress photographs, admitted into evidence at trial, of a cell door that was not the cell door of Nemhard. In claim 2, Nemhard claims that his attorney was ineffective at trial because he failed to suppress testimony regarding blood evidence that had not been preserved by the state. The court considers these claims together.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, Nemhard must demonstrate, first, that counsel's conduct "fell below an objective standard of reasonableness" established by prevailing professional norms. Id. at 688. Second, Nemhard must prove that this incompetence caused prejudice to him. Id. at 691. Counsel is presumed to be competent. Thus, "the burden rests on the accused to

demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the Strickland test, Nemhard must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of a trial. Id. Therefore, in order to prevail on his ineffective assistance of counsel claim, premised on counsel's strategies or decisions, Nemhard must demonstrate both deficient performance and sufficient prejudice. See Strickland, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In its analysis of Nemhard's ineffective assistance of counsel claim, the Connecticut Superior Court applied the standard established in Strickland. Nemhard v. Warden, No. CV 9803320912S, 2000 WL 992160, at **6-7(Conn. Super. Ct. June 30, 2000). Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1). Thus, Nemhard may obtain federal habeas relief only if the state court decisions were an unreasonable application of that standard to the facts of this case.

At Nemhard's hearing on his state habeas petition, the Connecticut Superior Court made the following findings and legal conclusions with regard to Nemhard's claims that counsel was ineffective at trial:

> His pro se petition was dated May 13, 1998. Attorney Vicki Hutchinson was then appointed to represent Nemhard. A revised amended petition was filed, dated February 2, 2000, alleging that Nemhard's incarceration is illegal because his conviction of the charge of rioting in a correctional institution

was obtained in violation of his right to the effective assistance of trial counsel.

\* \* \*

During the course of the criminal trial, photographs of a cell door (not Nemhard's cell door) were admitted as exhibits and shown by the state to the jury to disprove Nemhard's statement that his finger was severed when crushed in the closing cell door. Nemhard testified at the habeas trial that his criminal trial counsel, Attorney Dante Gallucci, failed to suppress this evidence. Nemhard claims the evidence should have been suppressed because potentially exculpatory evidence (i.e. photographs and testing of the blood stains on Nemhard's cell door) had not been photographed, preserved or investigated in any way by the state or by Nemhard's own criminal trial counsel. Additionally, Nemhard stated, during the habeas hearing, that the door to his cell had a sharp edge which was capable of severing a fingertip, but that the edge of the door shown in the photograph admitted in the criminal trial was rounded off.

\* \* \*

At the habeas trial, Nemhard testified that he was serving two sentences: the first sentence for felony murder; and the second consecutive sentence imposed here for rioting. He also admitted on cross-examination to other felony convictions. He admitted that he had injured his middle index finger on his left hand on the date of the crime and that the trial testimony was that his fingertip was found in the day room. He reiterated his claim that the injury occurred when his cell door closed on his finger. He claimed that the corrections officers moved evidence in the process of restoring order in the facility and that the case wasn't investigated properly. In particular, he claimed that Detective McGuire should have taken photographs of his cell door to corroborate his defense. He also claimed that counsel did not explain the elements of the crime of rioting and did not discuss the evidence.

Attorney Gallucci testified that he had been appointed after Nemhard's case reached the Part A court and that he was notified sometime in March of 1993. The Record on direct appeal shows his appearance as of April 8, 1993. Attorney Gallucci testified that he was a special public defender

assigned to the case and that he had extensive experience handling serious felony matters. In particular, he was familiar with the charge of rioting in a correctional institution because he had previously defended that charge at a similar trial and on appeal. Attorney Gallucci testified that he had discussed the evidence the state would be producing at trial with his client and that he had explained the elements of the crimes charged to Mr. Nemhard. He advised his client that, based on the version of events that he had heard from Mr. Nemhard, he expected that his client would be convicted of several of the charges, including the rioting charge. He advised his client to seriously consider the plea bargain that had been offered by the state. He testified that his client had told him prior to trial that, indeed, he had cut his fingertip on the metal mesh covering the day room door. Attorney Gallucci did not take a photograph of Nemhard's cell door. However, Nemhard agreed that the door and his cell had been cleaned prior to Attorney Gallucci's involvement. Attorney Gallucci produced a letter that he had written to his client documenting his advice. The letter contained handwritten comments by Mr. Nemhard when he mailed the letter back to Attorney Gallucci. The letter clearly establishes that Mr. Nemhard was informed of the rioting charge and was urged to seriously consider an offer from the state of five years (consecutive).

\* \* \*

Sergeant McGuire testified that he was the Connecticut State Police officer assigned to investigate the case. He reiterated his trial testimony that he examined the defendant's cell door but did not take photographs. He stated, consistent with his trial testimony, that his observation of the door revealed that there was blood on the doorjamb but not on the corresponding part of the door itself. This led him to conclude that the defendant had not cut his finger in the door.

\* \* \*

Under the factual circumstances of the case, Attorney Galluci effectively represented his client while complying with his responsibilities to the Court. Attorney Gallucci used a reasonable trial strategy in defending Nemhard. A criminal defense attorney can often benefit from what was not done in the investigation of a case. In the present case, Attorney Gallucci had every reason to conclude that his client had cut

9

> his finger on a metal screen over the day room door
> because his client had told him as much. It therefore was a
> sound trial strategy not to obtain or request testing of the
> screen, since counsel had reason to conclude that such
> testing would only corroborate the prosecution's case.
> Similarly, a photo of the cell door, if introduced by the
> defense, had the possibility of establishing the implausibility
> of the defendant's story. Since the prosecution did not have
> the photographs either, and the prosecution had the burden
> of proof, defense counsel could exploit this fact and at the
> least argue that the prosecution was presenting an
> incomplete case. Nemhard has not shown that this tactic
> was not a sound trial strategy.

Nemhard v. Warden, No. CV 9803320912S, 2000 WL 992160, at **4-5, 8 (Conn. Super. Ct. June 30, 2000) (footnote omitted).

At the state habeas hearing, the court credited the attorney's testimony over that of Nemhard and concluded that the attorney had provided Nemhard with effective representation. Id. at ** 5, 8. The state court judge held that the attorney had "used a reasonable trial strategy in defending Nemhard" and noted that "a criminal attorney can often benefit from what was not done in the investigation of a case."[1] Id. at * 8. In addition, the court determined that Attorney Gallucci's trial strategy was "appropriate and reasonable, especially in light of Nemhard's acknowledgment of guilt" and did not prejudice Nemhard's case. Id. Thus, the court concluded that Nemhard had not satisfied either prong of the Strickland test and denied the petition on this ground.

If the state court has considered a claim on the merits and Nemhard has not

---

[1] Furthermore, the transcript of the habeas hearing includes testimony by both trial counsel and Nemhard that counsel did object to the admission of the photographs that were taken of another inmate's cell door. (See Resp'ts' Mem. Law Opp'n Pet. Writ Habeas Corpus, App. A at ¶. 35, 76-77.) Thus, Nemhard's claim that his attorney made no attempt to suppress the photographs taken of another inmate's cell door is without merit.

presented clear and convincing evidence to the contrary, the federal court presumes that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1); Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001). Here, the state court decision is supported by specific references to the evidence presented at the hearing and the credibility of the witnesses. Nemhard has not rebutted that presumption by presenting clear and convincing evidence to the contrary. Thus, the court presumes that the state court's factual findings are correct, including the state court's choice to credit Attorney Gallucci's testimony regarding his interactions with Nemhard. The Superior Court concluded that Attorney Gallucci's decisions constituted sound trial strategy.

The Supreme Court has found that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 690. Further, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id. The Superior Court considered this when concluding that Attorney Gallucci had no reason to suspect that gathering additional evidence to document the appearance of Nemhard's cell block door would help Nemhard's case. Attorney Gallucci understood from Nemhard that Nemhard had in fact cut his finger in the day room, not on his cell block door. The Superior Court found that Nemhard had failed to prove that Attorney Gallucci's choice not to pursue evidence constituted deficient representation. It based this finding on its conclusion that Attorney Gallucci, after listening to his client's version of the facts, believed that the missing evidence would, if anything, prove the prosecution's case. This analysis is a reasonable application of

11

Strickland to Nemhard's claim.

The determination of the state court that Nemhard was afforded effective assistance of trial counsel is not an unreasonable application of the law to the facts of this case. Accordingly, the amended petition for writ of habeas corpus is denied.

## IV.    CONCLUSION

The amended petition for a writ of habeas corpus [**Dkt. No. 14**] is **DENIED**. Nemhard has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir.1998); Rodriguez v. Scully, 905 F.2d 24 (2d Cir.1990). In addition, pursuant to Title 28, United States Code, Section 1915(a)(3), the court finds that any appeal from this Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated this 20th day of September, 2004, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge